Barry Anthony VANN, Petitioner,

v.

Mike VANDENBROOK, R.N. Steve Helgerson, Officer James, Dylon Radtke, Officer Krocker, Officer Walker, Officer Bittelman, Officer Kottka, Officer Sainsbury and Officer John Doe 1, Respondents.

No. 09–cv–007–bbc.

United States District Court, W.D. Wisconsin.

Feb. 2, 2009.

**1240**

Barry Anthony Vann, Portage, WI, pro se.

Corey F. Finkelmeyer, Francis X. Sullivan, Wisconsin Department of Justice, Madison, WI, for Respondents.

## OPINION and ORDER

BARBARA B. CRABB, District Judge.

This is a proposed civil action for monetary and injunctive relief brought pursuant to 42 U.S.C. § 1983. Petitioner Barry Anthony Vann alleges that respondents were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Petitioner claims that respondents Mike Vandenbrook and Officer John Doe 1 were deliberately indifferent by not placing petitioner on observation status when he informed them that he was suicidal. In addition, petitioner contends that respondents R.N. Steve Helgerson, Dylon Radtke and Officers Krocker, Bittelman, James, Sainsbury, Kottka and Walker were deliberately indifferent to his serious medical needs by failing to treat the 133 cuts petitioner inflicted on himself.

Now before the court is petitioner's request for leave to proceed under the *in forma pauperis* statute, 28 U.S.C. § 1915, as well a motion for appointment of counsel. Petitioner has made his initial partial payment in accordance with 28 U.S.C. § 1915. However, because petitioner is a prisoner, I am required under the 1996 Prison Litigation Reform Act to screen his complaint and dismiss any claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted or ask for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Petitioner's request for leave to proceed in forma pauperis will be granted on his claims of deliberate indifference against respondent Vandenbrook for failing to place him on observation status, respondent Officer John Doe 1 for giving petitioner a razor when he expressed suicidal thoughts and respondent Helgerson for

neglecting to treat petitioner's cuts. Petitioner's request will be denied with respect to respondents Radtke, James, Krocker, Walker, Bittelman, Kottka and Sainsbury for petitioner's failure to state a claim against them on which relief may be granted. In addition, I will deny petitioner's request for appointment of counsel.

In his complaint, petitioner alleges the following facts.

## ALLEGATIONS OF FACT

Petitioner Barry Anthony Vann is a prisoner at the Columbia Correctional Institution in Portage, Wisconsin. Respondents Mike Vandenbrook, Steve Helgerson, Officer James, Dylon Radtke, Officer Walker, Officer Bittelman, Officer Kottka, Officer Sainsbury and Officer John Doe 1 are employed at the Columbia Correctional Institution.

Between August 17, 2007 and August 30, 2007, petitioner was suicidal. On August 24, 2007, petitioner told respondent Vandenbrook, who was a crisis intervention worker at Columbia, that he was suicidal and depressed and that he wanted to be placed on observation status. Respondent Vandenbrook told petitioner "I'm not going to put you on obs" and walked away. Between August 24, 2007 and August 30, 2007, petitioner told Vandenbrook on two more occasions that he was suicidal and wished to be placed on observation status.

On August 30, 2007, respondent John Doe 1 was dispensing razors. Petitioner told John Doe 1 that he was suicidal and "asked for a razor and [his] finger nail clipper so [he] could fix [his] problem with feeling suicidal." John Doe 1 gave petitioner his nail clippers and a razor and walked away. Petitioner then proceeded to use the nail clippers to break the razor open and cut himself 133 times on his arms. Petitioner was crying and unstable and began writing on the walls in blood.

When respondent Krocker came to retrieve the razor and nail clipper, he noticed the cuts on petitioner's arms and called respondent Bittelman to come to petitioner's cell. Bittelman told petitioner to hand over the razor and nail clipper, which petitioner did eventually. Respondents Krocker and Bittelman then left petitioner alone in his cell.

After an hour and ten minutes of lying in his cell bleeding, petitioner tore a sheet and used it to hang himself from the upper vent in his cell. Respondents Radtke, Krocker, Bittelman, James, Sainsbury, Kottka and Walker conducted an emergency cell extraction. Petitioner was cut down from the ceiling and transferred to the day room. Respondent R.N. Helgerson inspected petitioner's neck while the extraction team watched. Afterwards, petitioner was taken to the observation shower where a strip search was conducted and petitioner was placed under observation.

From August 30, 2007 until September 5, 2007, petitioner was on observation status. During this time, petitioner was not provided medical forms or medical treatment for his cuts, but experienced excruciating pain. Upon being released from observation status, petitioner submitted a health service request form. On September 10, 2007, petitioner received treatment for his 133 razor cuts for this first time.

## DISCUSSION

### A. *Eighth Amendment Deliberate Indifference*

■■ The Eighth Amendment to the United States Constitution requires the government " 'to provide medical care for those whom it is punishing by incarceration.' " *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir.1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50

L.Ed.2d 251 (1976)). On a claim brought under the Eighth Amendment, a prisoner must eventually prove that prison officials engaged in "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 106, 97 S.Ct. 285.

■ A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder,* 444 F.3d 579, 584–85 (7th Cir.2006). The condition does not have to be life threatening. *Id.* A medical need may be serious if "deliberately withholding of medical care results in needless pain and suffering," *Gutierrez v. Peters,* 111 F.3d 1364, 1369 (7th Cir.1997), or if it otherwise subjects the detainee to a substantial risk of serious harm, *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A failure to treat can result in the infliction of needless suffering in violation of the Eighth Amendment. *Williams v. Liefer,* 491 F.3d 710, 715 (7th Cir.2007) (quoting *Gil v. Reed,* 381 F.3d 649, 662 (7th Cir.2004)) (delay or absence of treatment can constitute harm under Eighth Amendment if it causes "needless suffering").

■ "Deliberate indifference" means that the officials were aware that the prisoner needed medical treatment, but disregarded the risk by failing to take reasonable measures. *Forbes v. Edgar,* 112 F.3d 262, 266 (7th Cir.1997). Thus, under this standard, petitioner's claim is analyzed in three parts:

(1) Whether petitioner had a serious health care need;

(2) Whether respondent knew that petitioner needed care; and

(3) Despite his awareness of the need, whether respondent failed to take rea-

sonable measures to provide the necessary care.

### 1. Respondents Vandenbrook and Officer John Doe 1

■ Suicide and suicide attempts pose a serious risk of harm to a prisoner's health and safety. *Estate of Cole by Pardue v. Fromm,* 94 F.3d 254, 261 (7th Cir.1996). Unlike traditional medical and mental illnesses, the harm is created by the prisoner and requires those supervising his or her incarceration to intervene. If a prison official fails to intervene when a prisoner poses a serious threat of suicide, then the official is disregarding a serious medical need because the inmate poses a substantial risk of harm to him or herself. *Farmer,* 511 U.S. at 842, 114 S.Ct. 1970 ("it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm"); *Sanville v. McCaughtry,* 266 F.3d 724, (7th Cir.2001). An inmate need not engage in self-harm or attempt suicide for a prison official to be found deliberately indifferent to the inmates' condition. *Farmer,* 511 U.S. at 845, 114 S.Ct. 1970 ("deliberate indifference does not require a prisoner seeking 'a remedy for unsafe conditions [to] await a tragic event'").

■ In this case, both respondents Vandenbrook and Officer John Doe 1 were aware of petitioner's suicide risk. According to petitioner's allegations, petitioner told Vandenbrook and John Doe 1 of his suicidal desire and requested placement on observation presumably because he feared he would act out on himself. Respondent Vandenbrook was told repeatedly about petitioner's state of mind and neglected to take any action. As a crisis intervention worker, respondent Vandenbrook would be aware that individuals who are suicidal pose threats to themselves and require some form of treatment. Moreover, the

repeated requests by petitioner suggest the seriousness and severity of his condition. Therefore, respondent Vandenbrook's complete inaction with respect to petitioner's threats could allow an inference of deliberate indifference to be drawn. *Estate of Cole*, 94 F.3d at 261–62 ("deliberate indifference may be inferred based upon a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment").

Respondent John Doe 1 was told on one occasion only about petitioner's suicidal state. However, John Doe 1's response to petitioner's expression of suicidal thoughts was to give petitioner a razor and nail clippers. Although John Doe 1 may not have known the severity of petitioner's condition at the time, his action seems to suggest that respondent knew he was subjecting petitioner to a substantial risk of harm. Therefore, petitioner will be granted leave to proceed *in forma pauperis* against both respondents Vandenbrook and John Doe 1 on his claim that these respondents were deliberately indifferent to petitioner's substantial risk of harm.

### 2. *Respondent Helgerson*

■■ Deliberate indifference can also be inferred when a doctor's treatment decisions are " 'so far afield of accepted professional standards' that no inference can be drawn that the decisions were actually based on medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir.2006); *Steele v. Choi*, 82 F.3d 175, 179 (7th Cir. 1996) ("If the symptoms plainly called for a particular medical treatment—the leg is broken, so it must be set; the person is not breathing, so CPR must be adminis-

tered—a doctor's deliberate decision not to furnish the treatment might be actionable under § 1983."). In the case of respondent Helgerson, petitioner alleges that he refused to provide any medical treatment for the cuts he inflicted on himself. When an individual has 133 wounds that are bleeding, it is reasonable to expect that those wounds require some treatment, whether it is bandages or antibiotic ointments. Because I am required to view petitioner's allegations liberally, I will assume that his wounds were more than superficial and conclude that respondent Helgerson's complete failure to treat petitioner states a claim that respondent Helgerson was deliberately indifferent to petitioner's serious medical needs.

### 3. *Respondents Radtke, Krocker, Bittelman, James, Sainsbury, Kottka and Walker*

■ Petitioner also asserts a claim of deliberate indifference against respondent officers Radtke, Krocker, Bittelman, James, Sainsbury, Kottka and Walker for their failure to provide treatment for his wounds. Because these respondent officers engaged in a cell extraction to stop petitioner from hanging himself and presumably saw blood coming from petitioner's wounds, the officers likely were aware that petitioner may need some form of treatment. However, petitioner alleges that the respondent officers transported him to the day room where R.N. Helgerson did nothing more than inspect petitioner. This allegation does not allow an inference to be drawn that the respondent officers neglected petitioner's medical needs. *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir.2006) (prison official will not incur liability when deferring to judgment of medical professional); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir.2005)("Perhaps it would be a different matter if [the non-medical prison official]

**1244**

had ignored [the plaintiff's] complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address [the plaintiff's] concerns."). Therefore, petitioner's claim against them will be dismissed.

### B. *Motion to Appoint Counsel*

■ In deciding whether to appoint counsel, I must first find that petitioner has made reasonable efforts to find a lawyer on his own and has been unsuccessful or that he has been prevented from making such efforts. *Jackson v. County of McLean,* 953 F.2d 1070 (7th Cir.1992). To show that he has made reasonable efforts to find a lawyer, petitioner must give the court the names and addresses of at least three lawyers that he has asked to represent him in this case and who turned him down. Petitioner has met this prerequisite. His motion includes the names and addresses of four law firms he has asked to help him that have declined to do so.

■ Second, I must consider both the complexity of the case and the petitioner's ability to litigate it himself. *Pruitt v. Mote,* 503 F.3d 647, 654–55 (7th Cir.2007). In his motion, petitioner argues that this case is legally and factually complex, that his claim requires the testimony of medical experts and that he lacks the legal training to present this case, especially in front of a jury. These are not good reasons to appoint counsel because these handicaps are universal among pro se litigants. To help petitioner in this regard, however, this court instructs pro se litigants at a preliminary pretrial conference about how to use discovery techniques available to all litigants so that he can gather the evidence he needs to prove his claim. In addition, pro se litigants are provided a copy of this court's procedures for filing or opposing dispositive motions and for calling witnesses, both of which were written for the very purpose of helping pro se litigants understand how these matters work. In sum, plaintiff's limited knowledge of the law is not a circumstance warranting appointment of counsel.

With respect to the complexity of the case, it is too early to determine whether this case is factually or legally difficult. However, petitioner has knowledge of many of the relevant facts concerning his interactions with respondents Vandenbrook and Officer John Doe 1 regarding his suicidal state as well as respondent Helgerson's response to petitioner's medical needs. Moreover, petitioner's claim appears to be a straightforward Eighth Amendment claim that respondent were deliberately indifferent to his threats of suicide and denied him medical treatment after he harmed himself. The law applicable to these claims is explained in this order, alerting petitioner to the facts he will need to prove both at summary judgment and trial in order to succeed on his claims. I conclude that petitioner has not shown at this time that he is incapable of prosecuting this case on his own in light of its complexity.

### ORDER

IT IS ORDERED that

1. Petitioner Barry Allen Vann's request for leave to proceed in forma pauperis is GRANTED with respect to his Eighth Amendment claims of deliberate indifference against (1) respondent Mike Vandenbrook for refusing to respond to his threats of suicide; (2) respondent Officer John Doe 1 for giving petitioner a blade and nail clipper after petitioner had expressed suicidal desires; and (3) respondent Steve Helgerson for refusing to treat petitioner's self-inflicted wounds.

2. Petitioner's motion for appointment of counsel is DENIED without prejudice.

3. For the remainder of this lawsuit, petitioner must send respondents a copy of every paper or document that he files with the court. Once petitioner has learned what lawyer will be representing respondents, he should serve the lawyer directly rather than respondents. The court will disregard any documents submitted by petitioner unless petitioner shows on the court's copy that he has sent a copy to respondent or to respondent's attorney.

4. Petitioner should keep a copy of all documents for his own files. If petitioner does not have access to a photocopy machine, he may send out identical handwritten or typed copies of his documents.

5. Petitioner is obligated to pay the unpaid balance of his filing fee in monthly payments as described in 28 U.S.C. § 1915(b)(2). This court will notify the warden at the Columbia Correctional Institution of that institution's obligation to deduct payments until the filing fee has been paid in full.

6. Pursuant to an informal service agreement between the Attorney General and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on the state defendants.

7. Petitioner's complaint is DISMISSED as to respondents Radtke, Krocker, Bittelman, James, Sainsbury, Kottka and Walker for petitioner's failure to state a claim against them on which relief may be granted.

8. Because I have dismissed one or more claims asserted in petitioner's complaint for one of the reasons listed in 28 U.S.C. § 1915(g), a strike will be recorded against petitioner.